PINE PLAINS LUMBER CORP., Appellant, v RICHARD M. MES-
SINA et al., Respondents, et al., Defendants.

Third Department, January 15, 1981

APPEARANCES OF COUNSEL

*Rapport & Meyers, P. C. (Victor Meyers* of counsel), for appellant.

*Richard M. Messina,* respondent *pro se.*

*Jerome H. Turk,* respondent *pro se.*

**OPINION OF THE COURT**

MAIN, J.

On February 28, 1979, plaintiff Pine Plains Lumber Corporation entered into a written agreement with Hudson Estates, a limited partnership, whereby Hudson agreed to sell and plaintiff agreed to buy, cut, skid and remove timber from land owned by Hudson in the Town of Esopus, Ulster County. Allegedly negotiated by Hudson's attorney, defendant Mandeville A. Frost, and signed for Hudson by one of its general partners, defendant Richard M. Messina, the agreement provided for a purchase price of $40,000 for the timber, subject to adjustment depending upon the actual quantity of timber removed, and upon execution of the agreement plaintiff delivered a $40,000 check to defendant Frost for Hudson. Of this amount, Frost allegedly retained for himself $9,350 as a broker's commission and for legal services while the remaining $30,650 was presumably held for or paid over to Hudson. Significantly, Hudson warranted in the contract that it had "unencumbered title to

all timber on the premises free from lien or claim by other, including mortgagee", and prior to and at the time the contract was executed defendants also allegedly made representations to the effect that Hudson had clear title to the timber.

Thereafter, on March 3, 1979, plaintiff commenced timbering operations on the land at an alleged daily cost of $1,000 for lumber crews, and it also allegedly entered into a contract for the resale of the timber at a profit. Its operations were abruptly halted on March 20, 1979, however, when it was served with a temporary restraining order enjoining its removal of timber pending determination of a motion in a mortgage foreclosure action by Highland Vineyards, Inc., to permanently enjoin Hudson from committing waste on the property. Apparently at the time plaintiff's contract with Hudson was executed, Hudson was approximately three years in default in mortgage payments on a principal balance of $400,000 owed to Highland with an additional $100,000 in interest also owed. Additionally, Hudson allegedly owed $30,000 in property tax arrearages and some amount on a second mortgage so that its land was encumbered in a total amount of approximately $700,000.

As a consequence of these developments, plaintiff obtained a temporary restraining order on March 28, 1979 within the cited foreclosure action whereby Hudson, Messina and Frost were enjoined from disposing of any portion of the $40,000 purchase price that plaintiff had paid for the timber. Alleging that it could not pay its debts as they came due, Hudson, on April 5, 1979, filed a petition for an arrangement in Federal District Court under chapter 12 of the Bankruptcy Act.[1] Pursuant to bankruptcy rule 703,[2] plaintiff then commenced an adversary proceeding in Bankruptcy Court on April 20, 1979, wherein it sought either the return of any portion of the $40,000 purchase price then

---

1. All references to statutory sections shall refer to the Bankruptcy Act (US Code, tit 11) unless otherwise specified. Since the instant proceedings was instituted prior to October 1, 1979, the date on which the former Bankruptcy Act was repealed and replaced by a new code (92 US Stat 2549), the law contained in the former Bankruptcy Act is applicable.

2. All references to rules shall refer to the bankruptcy rules (Rules Bankruptcy Pro, US Code, tit 11) unless otherwise specified.

in possession of Hudson or an order allowing plaintiff to specifically perform the contract and such further relief as would be just and equitable. Following a hearing on plaintiff's claim, the Bankruptcy Court, by order dated June 18, 1979, directed Hudson to segregate $30,650 cash and place it in an interest bearing account pending determination of the claim.

With these circumstances prevailing, plaintiff commenced the instant action on August 28, 1979 against defendants Messina and Jerome H. Turk, who are general partners of Hudson, and attorney Frost, seeking recovery of the $40,000 purchase price it paid as well as an additional $40,000 damages for its actions in reliance upon the agreement and its lost profits. Alleged as theories of recovery were breach of contract, breach of warranty, unjust enrichment and fraud. On October 5, 1979, defendants Turk and Messina moved to dismiss the complaint on various grounds, to wit: that the action was stayed pursuant to bankruptcy rule 12-43 and must be dismissed pursuant to CPLR 3211 (subd [a], pars 2, 3 or 5); that there was another action pending between the same parties for the same relief (CPLR 3211, subd [a], par 4); that the complaint failed to state any cause of action (CPLR 3211, subd [a], par 7) because plaintiff failed to allege that partnership property was insufficient to pay its claim or that there was no other effective remedy without resort to the individual partners' assets and, relative to the fraud action, that plaintiff alleged misrepresentations by defendants of future events or opinions and failed to allege that defendants had, at the time the representations were made, a present intent to dishonor; and that CPLR 3211 (subd [a], par 10) required dismissal because Hudson was a necessary party which could not be joined because of the automatic stay of any court proceeding against it imposed by bankruptcy rule 12-43. In response to this motion, plaintiff cross-moved to amend its complaint to include allegations that Hudson was insolvent and unable to pay its debts.

Ultimately, Special Term granted the motion to dismiss on the grounds that the action was stayed pursuant to the Bankruptcy Law, another action was pending between the parties and the complaint failed to state a cause of action.

Holding that Hudson's insolvency was a question before the Bankruptcy Court and not a subject matter over which it should assume jurisdiction, the court also denied plaintiff's cross motion.

■ This appeal followed, and we initially find that the court erred in dismissing the complaint because there was another action pending between the same parties. In this action, the parties are clearly not the same as the parties in the adversary proceeding in Bankruptcy Court wherein plaintiff, in seeking either the return of its $40,000 or specific performance, is proceeding solely against the partnership entity. Here, plaintiff named all three defendants individually in the caption of its complaint and no reference is made therein to either the partnership entity or the status of defendants Messina and Turk as partners of Hudson (cf. *Jet Age Knitwear Mach. Corp. v Philip*, 22 AD2d 674).

■ Similarly, the court erred in dismissing the complaint on the ground that the action was stayed under bankruptcy rule 12-43. That rule serves to stay any court or other proceeding against the debtor in a bankruptcy proceeding, i.e., the partnership entity in the present situation. However, as just noted, the partnership entity is not a party to plaintiff's action on this appeal and such being the case, rule 12-43 does not stay this action and certainly does not justify dismissal of the complaint in the action.

■ As for the court's dismissal of the complaint for failure to state a cause of action, we agree that the complaint as it now stands is insufficient as to the causes of action for breach of contract, breach of warranty and unjust enrichment because it fails to allege that the partnership is insolvent and unable to pay its debts, factors which must be established before a cause of action accrues against the partners as individuals (cf. *Helmsley v Cohen*, 56 AD2d 519). In our judgment, however, the court should have granted plaintiff's cross motion to amend rather than dismiss the complaint under the circumstances presented. Leave to amend should be freely given where, as here, there has been no showing that it will prejudice the opposing party *(Mosley v Baker*, 59 AD2d 936). Moreover, the proposed amendments are supported factually by the part-

nership's filing of a petition in bankruptcy thereby conceding its insolvency and inability to pay its debts.

■ With respect to the fraud action, the pleading is sufficient on its face, and defendants' contention that the misrepresentations, as alleged by plaintiff, pertain to future events, opinions and promises of future performance and thus are not actionable, is without merit. Plaintiff's allegation that defendants fraudulently represented prior to and at the time that the contract was executed that Hudson had unencumbered title to all timber on the premises free from liens or claims by others plainly does not pertain to a future event. Moreover, while the additional alleged fraudulent misrepresentation by defendants that plaintiff would be able to cut and remove the timber without interference or hindrance of any kind does relate to a future event, other facts are alleged, most notably defendants' knowledge of the mortgages on the property and of the imminent foreclosure action, from which can be inferred defendants' present intent not to carry out a promise of future action (cf. *Lanzi v Brooks*, 43 NY2d 778).

■ In sum, therefore, we hold that Special Term's dismissal of the complaint was unwarranted. However, since resolution of this action is predicated upon a determination of issues submitted by plaintiff to Bankruptcy Court, namely the extent, if any, of the partnership's contractual obligation and liability and the extent to which partnership assets can satisfy plaintiff's claims (see-*Helmsley v Cohen*, *supra*), Special Term should stay the present action pending further proceedings in Bankruptcy Court (CPLR 2201; see, also, CPLR 3211, subd [a], par 4).

Regarding the subject Bankruptcy Court proceedings, we would finally note that on October 30, 1980 this court received a copy of a July 1, 1980 Bankruptcy Court decision wherein it was held that plaintiff was entitled to rescind its contract with the partnership and be restored to the *status quo*, i.e., to the return of so much of the $40,000 as is in the partnership's custody and also segregated and identifiable. The court additionally ruled that, in the event plaintiff has suffered further damages, it would be granted leave to file a claim for such further damages and for the

deficiency, if any, in the segregated and identifiable funds and $40,000.

The order should be reversed, on the law, with costs, and the motion denied; plaintiff's cross motion to amend its complaint granted, and the matter remitted to Special Term for further proceedings not inconsistent herewith.

MAHONEY, P. J., SWEENEY, MIKOLL and HERLIHY, JJ., concur.

Order reversed, on the law, with costs, and motion denied; plaintiff's cross motion to amend its complaint granted, and matter remitted to Special Term for further proceedings not inconsistent herewith.