CUNARD LINE LIMITED, Plaintiff,

v.

Michael D. ABNEY, et al., individually and
as Co-Partners doing business under the
firm name of Coopers & Lybrand, De-
fendants.

No. 81 Civ. 4671 (WK).

United States District Court,
S. D. New York.

June 7, 1982.

Lord, Day & Lord, New York City by Michael J. Murphy, Stephen J. Crimmins, Kathy A. Helmer, New York City, for plaintiff.

Hughes, Hubbard & Reed, New York City by George A. Davidson, Fredrika V. Miller, Julian S. Millstein, Joseph A. Clark, III, New York City, for defendants.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

The case is before us on defendant's motion to dismiss the amended complaint.

The plaintiff, Cunard Line Limited [Cunard], is a corporation incorporated in Great Britain. On July 27, 1981, invoking the Court's diversity jurisdiction, Cunard filed a complaint against Coopers & Lybrand [Coopers], one of the so-called "big eight" national partnerships of certified public accountants. The allegations in the complaint tell of much that had gone awry with the design and installation of a computer system which Coopers had agreed to develop for Cunard. The details of the underlying dispute are not germane to this motion, except that the complaint stated a claim for breach of contract [the contract claim], one for fraud, and one for professional malpractice [the tort claims]. Several million dollars in damages were sought.

On September 14, 1981 Coopers moved to dismiss for lack of subject matter jurisdiction on the ground that one of its partners was an alien. Consequently—defendant argued—Coopers was also an alien for juris-

dictional purposes and, there being an alien corporation and an alien partnership on either side of the controversy, diversity jurisdiction was lacking. A few days later, on September 17, 1981, Cunard started a "parallel action" against Coopers in New York State Supreme Court.

At oral argument on the motion to dismiss the original complaint, plaintiff observed that defendant's jurisdictional objections could be obviated by the expedient of filing an amended complaint which did not name the partnership as defendant, but named as individual defendants all Coopers' partners except the alien. Consequently, on October 2, 1981 we granted the motion to dismiss the original complaint, without prejudice to the filing of an amended one.[1] Such amended complaint was filed the very same day, and is identical in substance to the original one. However, rather than naming Coopers as a defendant, it named several hundred individual partners believed by Cunard to be United States citizens, purporting to sue them individually and as "co-partners doing business" under the name of Coopers. Now before us is defendant's motion to dismiss the amended complaint.

On December 18, 1981 we heard oral argument on this second motion. Coopers then contended that Cunard was, for jurisdictional purposes, not only an alien corporation but also a citizen of New York State because it had "its principal place of business" in New York City. See 28 U.S.C. § 1332(c). Consequently, jurisdiction would be lacking on the additional ground that there would be a controversy between New York citizens: a New York corporate plaintiff against a partnership with New York members. The plaintiff argued, on the other hand, that the facts showed that Cunard had its principal place of business in England and that, in any event, Cunard could only be a citizen of Great Britain since the "dual citizenship" provision, 28 U.S.C. § 1332(c), did not apply to alien corpora-

---

1. Our leave to file an amended complaint was not required since Coopers had not yet answer-

ed. See Fed.R.Civ.P. 15(a); 3 Moore's Federal Practice ¶ 15.07[2] at 45–46.

tions. Without ruling, we suggested from the Bench that, at least as to the legal question, the better view appeared to be the one advocated by defendant. Thereupon plaintiff announced that it would cut this legal Gordian knot by doing, again, what it had done once before: file yet another amended complaint naming as defendants only those partners of Coopers who were neither aliens nor citizens of New York. Therefore we could dispense, there and then, with any legal argument about the applicability of the "dual citizenship" statute to foreign corporations and with any factual inquiry about the extent of Cunard's contacts with New York State. Thus poised, the motion was taken under advisement.[2] These preliminary skirmishes have not hindered pre-trial discovery, which continues on the understanding that its fruits will be available whether the litigation ultimately proceeds in this Court or in the "parallel" state action.

*Discussion*

### A. Introduction

The motion to dismiss the amended complaint raises three distinct questions: (a) do the tort claims state viable causes of action against the individual defendants named in the complaint? (b) does the contract claim state a cause of action against such defendants? and (c) may the partnership itself be sued in this Court by the device of individually suing fewer than all of its members?

■ The first of these questions is easily answered by a simple "Yes": we have subject matter jurisdiction over the named partners (at least as to those several hundred who are not New York citizens), and the complaint states a tort claim against them. With respect to the remaining two questions, however, the answer is "No." For reasons we shall separately discuss, we conclude that whereas we have subject matter jurisdiction over the diverse individual partners, as to them the contract claim must be dismissed for failure to state facts giving rise to relief under New York law; and that we have no subject matter jurisdiction over any action—in tort or contract—against the partnership itself.

### B. The Contract Claim Against Individual Partners

■ Section 26(2) of the New York Partnership Law makes partners jointly liable for the performance of contracts entered into by the partnership. The joint nature of the obligation does not imply that the joint obligor is immune from being sued individually. *Caplan v. Caplan* (1935) 268 N.Y. 445, 448, 198 N.E. 23. It only gives the joint obligor the right to insist that the plaintiff join other such obligors if joinder be possible.[3] *Jones Knitting v. A. M. Pullen & Co.* (S.D.N.Y.1970), 50 F.R.D. 311 at 315. And, upon following a prescribed procedure, *see* New York Civil Practice Law § 5201; *Detrio v. United States* (5th Cir. 1959) 264 F.2d 658, 661, a plaintiff may hold a joint obligor personally liable on a joint obligation.

■ This general rule applies to individual partners since they are a genus in the wider family of joint obligors. However, for partners there is, under New York law, a prerequisite to individual liability on a joint partnership obligation: "resort may be had against them only if the joint or

---

**2.** Two other motions have been noticed: one by plaintiff for an order allowing service by mail, and one by defendant to dismiss the fraud claim for failure to plead it with the particularity required by Fed.R.Civ.P. 9(b). We defer ruling on both these motions, as well as on the issue of Cunard's alleged New York citizenship.

**3.** The individual joint obligor is a necessary party (not an indispensable one) in an action against one or more of the joint individual obligors, *see*, 3A Moore's Federal Practice ¶ 19.11; and Fed.R.Civ.P. 19 states the conditions under which joinder may be dispensed with. *See*, 3A Moore's Federal Practice ¶ 19.-10. By contrast, if the obligors are also "severally" liable—as in the case of partners charged with a partnership tort liability, *see* N.Y. Partnership Law § 26(1)—then they are merely proper parties to an action against them individually. *See* Fed.R.Civ.P. 19(a) advisory committee note. Consequently, they don't even have the right to insist on joinder and the plaintiff may freely "pick his target." *Caplan v. Caplan, supra,* 268 N.Y. at 448, 198 N.E. 23.

partnership property is insufficient to pay the firm debts or it appears there can be no effective remedy without resort to individual property." *Wisnouse v. Telsey* (S.D.N.Y. 1973) (Weinfeld, J.), 367 F.Supp. 855, 859, and cases there cited at note 7. Indeed, a complaint that fails to allege that a partnership is insolvent and unable to pay its debts is insufficient to state a claim for breach of contract against the partners as individuals. *Pine Plains Lumber Corp. v. Messina* (3rd Dep't 1981) 78 A.D.2d 271, 435 N.Y.S.2d 381, 384. *See also Helmsley v. Cohen* (1st Dep't 1977) 56 A.D.2d 519, 391 N.Y.S.2d 522, 523.

■ No such allegation was made in this case, and it clearly seems unwarranted. Indeed, the plaintiff specifically observed that the possibility that this partnership—one of the "big eight" national accounting firms—might not be able to satisfy a judgment was an "unlikely event." *See* Tr. of Hearing of December 18, 1981 at 28. *Cf. Pine Plains Lumber Corp. v. Messina, supra,* 435 N.Y. S.2d at 384 (allowing amendment to complaint to plead insolvency). It follows that the complaint states insufficient facts to entitle plaintiff to relief on the contract claims against any of the defendants as individuals.

## C. *The Claims Against the Partnership*

In light of the impossibility of fastening contractual liability upon any defendant in his individual capacity, it becomes vital to determine whether there is a way, in this forum, to reach the assets of the partnership. The question is simply this: Do we have subject matter jurisdiction over the partnership?

■ We start our inquiry with a hoary, basic, and well-established proposition: for purposes of diversity, a partnership is a citizen of *each* jurisdiction of which a partner is a citizen. *Great Southern Fire Proof Hotel Co. v. Jones* (1900) 177 U.S. 449, 456, 20 S.Ct. 690, 693, 44 L.Ed. 842; *Lewis v. Odell* (2d Cir. 1974) (Hays, C. J.) 503 F.2d 445, 446; *Woodward v. D. H. Overmeyer Co.* (2d Cir. 1970) (Friendly, C. J.) 428 F.2d 880, 883, *cert. denied,* 400 U.S. 993, 91 S.Ct.

460, 27 L.Ed.2d 441 (1971); *Coopers & Lybrand v. Cocklereece* (S.D.N.Y.1981) 506 F.Supp. 587, 588; *Lucido v. Cravath, Swaine & Moore* (S.D.N.Y.1977) 425 F.Supp. 123, 125, n.2 (no jurisdiction over defendant partnership with non-diverse members); *Boise Cascade Corp. v. Wheeler* (S.D.N.Y. 1976) 419 F.Supp. 98, 100 (no jurisdiction over defendant partnership with non-diverse members), *aff'd mem.* (2d Cir. 1977), 556 F.2d 554; *Molasky v. Garfinkle* (S.D.N.Y.1974) 380 F.Supp. 549, 553 (no jurisdiction over defendant partnership with non-diverse members); *David Crystal, Inc. v. Cunard S. S. Co.* (S.D.N.Y.1963) 223 F.Supp. 273, 289 (no jurisdiction over defendant partnership with non-diverse members), *aff'd,* (2d Cir. 1964) 339 F.2d 295, *cert. denied* (1965), 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271; *Joscar Co. v. Consolidated Sun Ray, Inc.* (E.D.N.Y.1963) 212 F.Supp. 634, 636; *Eastern Metals Corp. v. Martin* (S.D. N.Y.1960) 191 F.Supp. 245, 249–53 (no jurisdiction over defendant partnership with non-diverse members). *Cf. Plechner v. Widener College, Inc.* (3d Cir. 1977) 569 F.2d 1250, 1260–61 (same rule for unincorporated associations). Even those who disagree with the wisdom of the rule concede that it is, by now, a dependable statement of the generally accepted law of federal jurisdiction. *See* 3A Moore's Federal Practice ¶ 17.25 at 259–64; 2A Moore's Federal Practice ¶ 8.10 at 68. Consequently, the conceded existence of an alien partner of Coopers' deprives this Court of subject matter jurisdiction over the partnership. It would be "a suit by an alien against a partnership with an alien partner, [and consequently] federal jurisdiction would not exist, because diversity jurisdiction does not extend to controversies between aliens." 1 Fed.Proc., L.Ed. § 1:189. *See also Corporation Venezolana de Fomento v. Vintero Sales* (2d Cir. 1980) 629 F.2d 786, 790, *cert. denied* (1981) 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804; *ITT v. Vencap, Ltd.* (2d Cir. 1975) 519 F.2d 1001, 1015.

This would seem to require the granting of defendant's motion to dismiss but for the fact that in *Hamond v. Clapp* (S.D.N.Y.

1978) (Knapp, J.) 452 F.Supp. 885, following the reasoning of *Jones Knitting Corp. v. A. M. Pullen & Co.* (S.D.N.Y.1970) 50 F.R.D. 311, we ruled that the consequence of these well-settled principles of federal jurisdiction could be avoided by dropping from the action any non-diverse partner whose citizenship would oust the court of jurisdiction over the partnership. We now find that decision, as well as the one in *Jones Knitting*, to have been unsound.

The opinions in *Hamond* and in *Jones Knitting* concerned themselves primarily with the question of whether, under Fed.R. Civ.P. 19, individual members of a partnership were all "indispensable" to an action against any of them, or were merely "necessary", allowing—in the latter case—for the non-diverse among them to be dropped under Fed.R.Civ.P. 21 to preserve diversity over the remaining individual partners. Both in *Hamond* and in *Jones Knitting* it was first established that partners—as joint obligors— are not indispensable parties to a suit against individual partners upon a joint partnership obligation. Consequently, non-

diverse individual partners could be dropped to preserve jurisdiction over the diverse ones, as can all individual defendants who are "non-indispensable." From the premise that jurisdiction over the diverse partners as individuals could thus be salvaged, it was concluded that diversity jurisdiction over the *partnership* itself could be preserved by dropping non-diverse partners. *See Jones Knitting, supra,* 50 F.R.D. at 315.[4] We now find that this crucial jurisdictional conclusion does not follow from its premises.[5] The citizenship of a *partnership* is that of *all* its partners, irrespective of whether any of them—as "non-indispensable" individual defendants—may be dropped to preserve jurisdiction in an action against the *individual* partners to enforce a joint partnership obligation.[6]

Two appellate cases, *Kerr v. Compagnie De Ultramar* (2d Cir. 1958) 250 F.2d 860 and *Weaver v. Marcus* (4th Cir. 1948) 165 F.2d 862, were relied upon in support of the jurisdictional conclusion that citizenship of a partnership could be limited to that of its

---

4. The pivotal language reads:
   The citizenship of a partnership, for diversity purposes, is determined not by the citizenship of all the partners but initially by the citizenship of those partners who are actually joined in the action and ultimately the citizenship of those who, as indispensable parties, must necessarily be joined [footnote omitted]. Since under New York and North Carolina law, partners are at most necessary and not indispensable parties, plaintiff can refuse to join non-diverse partners and can move to drop partners who prove to be non-diverse. 50 F.R.D. at 315.

5. In *Hamond* we rather readily accepted this reasoning because no one had called to our attention the New York rule that contractual liability cannot attach against an individual partner—absent partnership insolvency—until it has first been established against the partnership itself. Consequently, we did not consider whether, absent a viable state cause of action against the individual partners, a plaintiff in contract could nonetheless recover against the assets of the partnership. A reading of Judge MacMahon's opinion in *Jones Knitting*—where both a partnership *and* its individual members had been named as defendants, 50 F.R.D. 311 at 313—suggests that there too the Court was not asked to consider the possibility of obtaining judgment against partnership assets in the absence of viable state claims against individu-

al partners. Neither case, therefore, brought into focus the practical distinction between a suit against a partnership and a suit against some of its individual members.

6. It has been said "[w]hen the question relates to [diversity jurisdiction] we must look in the case of a suit by or against a partnership association to the citizenship of the several persons *composing* such association." *Great Southern Fire Proof Hotel Co. v. Jones, supra,* 177 U.S. at 456, 20 S.Ct. at 693 (emphasis added). That is, "[a] partnership has no citizenship separate and distinct from the partners that compose it." 1 Fed.Proc., L.Ed. § 1:187. But the obverse is also true: a partnership *has* the citizenship of the partners "that *compose* it." *See* cases cited, *supra*, opening of part "C". A partner who is dropped because, as an individual defendant, he is not indispensable under Fed.R.Civ.P. 19 does not cease to "compose" the partnership. This he can do only when he ceases to be a partner. Consequently, the status of a partner as an individual defendant under Rule 19 can have no bearing on the citizenship of the partnership of which he is a member. *Cf. also* Fed.R.Civ.P. 82; 7 Moore's Federal Practice ¶ 82.02. *See also* Fed.R.Civ.P. 19(a); 3A Moore's Federal Practice ¶ 19.04[2]; *Grynberg v. B. B. L. Associates* (D.Colo.1977), 436 F.Supp. 564, 568.

members actually made parties to a suit. *See* 50 F.R.D. at 315 n.11. Upon re-examination, neither of the cases appears to support the conclusion. *Kerr* does not deal at all with a suit against a partnership, but is merely an illustration of the rule that jointly and severally liable *individual* defendants are not indispensable and may, thus, be dropped to preserve jurisdiction. In *Weaver*, although there was, to be sure, a partnership involved, the Fourth Circuit concentrated on the liability of the individual partners. It held that the District Court should have granted plaintiff's motion to drop a non-diverse partner to preserve jurisdiction over the diverse ones, but it didn't consider the question of jurisdiction over the partnership itself.[7] Therefore, the case again illustrates only the maxim that jointly and severally liable non-diverse individual defendants may be dropped to salvage jurisdiction over the diverse ones.

Turning to authorities which refer to *Jones Knitting* or to *Hamond v. Clapp*, we find that these two have been cited in well over a dozen other cases, none of which follow them in holding that the jurisdiction over a partnership can be preserved by not naming the non-diverse partners as defendants.[8]

■ Finally, plaintiff contends that several provisions of New York law contemplate that a suit against a partnership may

7. At the close of its opinion the Court observed:

We do not think it necessary here to consider or decide, if a judgment is obtained here by plaintiffs with Carl Marcus [the partner dropped to preserve jurisdiction over the remaining ones as individuals] dropped as a party, the extent to which such a judgment would be binding on Carl Marcus under the doctrine of res adjudicata [sic], or whether, under such a judgment, execution could be levied on all the assets of the partnership. These questions, and any other appropriate ones, can be decided if, as and when they are properly raised. *Weaver v. Marcus, supra,* 165 F.2d at 866.

8. *Jones Knitting* has been cited, for instance, for its exposition of the principles governing the transfer of cases between District Courts pursuant to 28 U.S.C. § 1404. *See, e.g., Zerance v. William Harvey Research Corp.* (E.D.Pa.1975) 401 F.Supp. 804, 806; *Atlantic Richfield Co. v. Stearns-Roger, Inc.* (E.D.Pa.1974) 379 F.Supp. 869, 871; *U. S. Industries v. Procter & Gamble Co.* (S.D.N.Y.1972) 348 F.Supp. 1265, 1268. It has also been cited for its exposition of the principles governing the distinction between "necessary" and "indispensable" parties under Fed.R.Civ.P. 19. *See, e.g., A. J. Kellos Co. v. Balboa Ins. Co.* (S.D.Ga.1980), 495 F.Supp. 408, 414; *Wright Farms Construction, Inc. v. Kreps* (D.Vt.1977) 444 F.Supp. 1023, 1028; *Wolgin v. Atlas United Financial Corp.* (E.D.Pa.1975) 397 F.Supp. 1003, 1012; *Inland-Western Investment Co. v. Winkler* (S.D.N.Y. 1975) 65 F.R.D. 515, 517. It has been often cited for the rule that jointly and severally liable individual defendants are not "indispensable" and, therefore, may be dropped to preserve jurisdiction. *See, e.g., Prescription Plan Service Corp. v. Franco* (2d Cir. 1977) 552 F.2d 493, 498 (trustee and administrator); *Fradkin Brothers Furniture Village, Inc. v. Bradford*

*Trust Co.* (S.D.N.Y.1981) 89 F.R.D. 667, 671 (accountants and trust); *Kaplan v. Industrial Risk Insurers* (E.D.Pa.1980) 86 F.R.D. 484, 488 (members of an association); *Smith v. Mandel* (D.S.C.1975) 66 F.R.D. 405, 410 (partnership and guarantor); *Inland-Western Investment Co. v. Winkler Realty Corp., supra,* 65 F.R.D. 515, 517 (original payee and accommodation party). *Cf. Baker v. Estate of Rosenbaum* (D.P. R.1972) 58 F.R.D. 496, 498 (daughter, "forced heir" under Puerto Rico law, indispensable party in suit to recover for services rendered to deceased parents). None of these cases follow *Jones Knitting* into what is, we now believe, forbidden jurisdictional territory. Neither do the few cases that cite *Hamond v. Clapp* stand for the jurisdictional proposition which we now reject. *See Coopers & Lybrand v. Cocklereece, supra,* 506 F.Supp. 587, 590; *Kaplan v. Industrial Risk Insurers, supra,* 86 F.R.D. 484, 488.

We have been able to uncover only two other cases which, without citing *Jones Knitting* or *Hamond v. Clapp,* appear to allow a suit against a partnership to continue after a non-diverse partner had been dropped. *Isdaner v. Beyer* (E.D.Pa.1971) 53 F.R.D. 4, 6 (non-diverse partner dismissed and suggestion made that recovery would be had from partnership assets); *Schmitz v. St. Luke's Hospital* (D.N.D. 1966) 258 F.Supp. 392 (non-diverse partner dismissed and no indication that action against partnership could not, thereafter, continue). We simply note that in neither case was the jurisdictional question now before us even considered. As in our own *Hamond v. Clapp,* these cases assumed the propriety of the jurisdictional conclusion we now reject and focused on the wisdom of allowing the action to continue without the presence of certain defendants in light of the dictates of Fed.R.Civ.P. 19.

be maintained by naming fewer than all its members as individual defendants. We be-lieve this contention to be unsound.[9] However, even if it were correct as a matter of

**9.** In support of its contention plaintiff cites N.Y. General Obligations Law § 15–102. That section provides that a judgment against one or more of several, joint, or joint and several obligors shall not discharge a co-obligor who was not a party. The object of this provision and of its antecedents was to abolish the common law rule that a judgment against one of several joint obligors on a joint obligation operated as a merger and barred a subsequent suit against the other obligors upon the original cause of action. *See Bloom v. Kapps* (Sup.Ct.1947) 73 N.Y.S.2d 325, 329; *All v. Delaware & H. R. Corp.* (Sup.Ct.1941) 179 Misc. 977, 29 N.Y.S.2d 439, 441. Individual joint obligors may acquire such status by virtue of their being partners and, consequently, this provision would allow a plaintiff to sue the other members of a partnership even after obtaining a judgment against one of them on a joint obligation. But it is surely no authority for the proposition that one may reach assets which *all* partners hold as "tenants in partnership", *see* N.Y. Partnership Law §§ 50, 51, without naming every partner. Indeed, specific partnership property is not subject to execution on judgments against fewer than all partners, *Saligman v. Ginsburg* (Sup.Ct.1950) 102 N.Y.S.2d 142, 144, and resort to partnership assets may be had only on claims against *the partnership, Geitner v. United States Fidelity* (1929) 251 N.Y. 205, 167 N.E. 222, or on claims against all individual partners. *Rhoades v. Robles* (Sup.Ct.1955) 1 Misc.2d 43, 145 N.Y.S.2d 286, 289. *See also* N.Y. Partnership Law § 51(c).

Plaintiff also cites section 1025 of the N.Y.Civ. Prac.Law. It provides that a partnership may be sued in the partnership name, rather than by the route, customary at common law, of naming *all* the partners as "parties defendant." *See, e.g., Caplan v. Caplan* (1935), 268 N.Y. 445, 448, 198 N.E. 23. However, this optional procedure, *Arlen of Nanuet, Inc. v. State* (Ct.Cl. 1967) 52 Misc.2d 1009, 277 N.Y.S.2d 560, 563, is merely a "shorthand" for pleading purposes, *Eastern Metals Corp. v. Martin* (S.D.N.Y.1960) 191 F.Supp. 245, 252, which only circumvents the formal requirement that all individual partners—who may not be known to plaintiff—be named in an action to recover against the partnership. This provision effects no other change in the applicable law. Under it, the liability of partners remains unchanged, *Taylor v. Brodt* (Sup.Ct.1977), 90 Misc.2d 793, 396 N.Y.S.2d 143, 144, and so do their rights. *D'Ippolito v. Cities Service Co.* (2d Cir. 1967) 374 F.2d 643, 647. Indeed, a suit against a partnership in its own name is to be regarded as a suit against all the partners, since their liability continues to be that which would have obtained had all of them been separately named as parties defendant. *Martinoff v. Triboro Roofing Co.* (Sup.Ct.1962) 228 N.Y.S.2d 139, 141 (suit against partnership in its name deemed brought against all co-partners). *Cf. Caprice Imports v. Soc. Acc. Semplice Calzaturificio* (Sup.Ct.) 27 Misc.2d 983, 212 N.Y.S.2d 893, *aff'd* (1961), 13 A.D.2d 952, 216 N.Y.S.2d 498 (answer on behalf of partnership was answer for *all* members of partnership). The provision is merely a device to facilitate litigation. *Koons v. Kaiser* (S.D.N.Y.1950) 91 F.Supp. 511, 516 (citizenship of partnership for venue purposes is that of *all* its partners), from which we cannot infer that if a suit against a partnership is not brought in the partnership name it may be maintained by naming fewer than all its partners.

Our attention has also been called to N.Y.Civ. Prac.Law § 310 which allows service on a partnership by personally serving any of the partners. This section is but the practical complement to N.Y.Civ.Prac.Law § 1025. If the latter were to be a practical solution for the problem of having to *name* possibly unknown partners, it required a correlative way to *serve* the partnership without serving all its partners. That is the purpose of § 310. Indeed, both sections of the N.Y.Civ.Prac.Law stem from a common statutory antecedent: § 310 is a derivation from the second sentence of § 222–a of the Civil Practice Act of 1920, as amended, and § 1025 is the first sentence of the selfsame section of the C.P.A. As we had concluded in connection with N.Y.Civ.Prac.Law § 1025, we are, likewise, unpersuaded that § 310 substantiates plaintiff's position that New York law allows suit against a partnership by naming fewer than all its partners. Section 310 deals only with *service*, not with who should be the named defendant. Indeed—just as we concluded as to § 1025—"the effect of *service* on the partnership [by serving fewer than all partners] is the same as if *all* the persons carrying on the business as *partners* had been *named* individually as defendants." *Fleckenstein v. Nehrbas* (Sup.Ct.1962) 233 N.Y.S.2d 920, 921 (emphasis added) (suit against a partnership instituted by service on fewer than all partners bars another suit against remaining partners because pending suit deemed brought against *all* partners). Finally, we have also considered N.Y.Civ.Prac. Law. § 1501, which provides that:

> Where less than all of the *named* defendants in an action based upon a joint obligation . . . are served with the summons, the plaintiff may proceed against the defendants served . . . , and if the judgment is for the plaintiff it may be taken against all the defendants. (Emphasis added.)

On its very face this provision allows only the prosecution of an action when service is effected on fewer than *all named* joint obligors—partners, in particular. That is, if *in personam* jurisdiction cannot be had over all co-obligors, the action to recover against jointly held property may nonetheless proceed and recovery may indeed be had against such jointly held

state law, it would have no bearing on any jurisdictional determination we may make. It is axiomatic that, in determining their own jurisdiction, District Courts of the United States must look only to Article III of the United States Constitution and to congressional grants of jurisdiction. *Verlinden B. V. v. Central Bank of Nigeria* (2d Cir. 1981) 647 F.2d 320, 324–25, and cases cited therein; *B., Inc. v. Miller Brewing* (5th Cir. 1981) 663 F.2d 545, 548. They may not look to the acts of state legislatures. "However extensive their power to create and define substantive rights, the states have no power directly to enlarge or contract federal jurisdiction." *Duchek v. Jacobi* (9th Cir. 1981) 646 F.2d 415, 419 and cases there cited, note 4. *See also* 1 Fed.Proc., L.Ed. § 1:47; *Markham v. City of Newport News* (4th Cir. 1961) 292 F.2d 711, 713; *TBK Partners v. Western Union* (S.D.N.Y. 1981) 517 F.Supp. 380, 388; *Kanouse v. Westwood Obstetrical and Gynecological Associates* (D.N.J.1981) 505 F.Supp. 129, 129; *Clark v. Times Square Stores* (S.D.N.Y.1979) 469 F.Supp. 654, 655; *Prendergast v. Long Island State Park Comm.* (E.D.N.Y. 1970) 330 F.Supp. 438, 440; *Crivello v. Board of Adjustment* (D.N.J.1960) 183 F.Supp. 826, 828. *Cf. McCahill v. Borough of Fox Chapel* (3d Cir. 1971) 438 F.2d 213, 218 (state legislature cannot redefine "case or controversy" under federal constitution); *Bekoff v. Clinton* (S.D.N.Y.1972) 344 F.Supp. 642, 645 (state *courts* are without power to divest federal courts of jurisdiction).

As we are free of authority constraining us to do otherwise, we now reach a conclusion that is consistent with the long line of precedent cited at the opening of this part

"C." We see no ground to adhere to the view we expressed in *Hamond v. Clapp* that dropping a non-diverse partner will salvage this Court's jurisdiction over the partnership. The citizenship of a partnership is that of *all* the partners who compose it, rather than just that of those who happen to be non-diverse. A partnership does not—like a jurisdictional chameleon— change the color of its citizenship to accommodate the choice of a federal forum by a non-diverse opponent. We hold that in this case we—as a court of only limited jurisdiction, *Owen Equipment & Erection Co. v. Kroger* (1978) 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274—lack power over the subject matter of the action against the partnership because Cunard (by virtue of its place of incorporation) and Coopers (by virtue of it having an alien partner) are both aliens. In view of this determination we have no occasion to rule whether Cunard is also a New York citizen for diversity purposes, or—more generally—whether or not 28 U.S.C. § 1332(c) should apply to foreign corporations.

### Conclusion

The claims against the partnership are dismissed for lack of jurisdiction without prejudice, of course, to their being raised in an appropriate forum. The contract claims against those individual partners over whom we have subject matter and in personam jurisdiction are dismissed for failure to state a claim under New York law.

A conference will be held in Room 619 on July 7, 1982, at 9:30 A.M. to determine whether the remaining tort claims against diverse individual partners[10] should be

---

property. *See* N.Y.Civ.Prac.Law. § 5201(b); 7B N.Y.Civ.Prac.Law § 5201 at 75 (practice commentary C5201:17). But § 1501 is not an authority for the proposition that a partnership may be sued by *naming* fewer than all its members. Indeed, it suggests precisely the contrary: that *all* partners (joint obligors) *must* be *named* defendants. This suggestion is buttressed by language in the Fourth Report to the Legislature in connection with § 1501. "It [section 1501] allows the plaintiff to *name* as defendants, and obtain a judgment against, *all* the joint obligors, although service has not

been made upon all of them..." 4th Report Leg.Doc. (1960) No. 20, *partially reprinted* in 7B N.Y.Civ.Prac.Law § 1501 at 393. We could not interpret this section, therefore, as allowing even a suit against fewer than all named joint obligors, let alone as effecting the result plaintiff urges upon us in the context of actions against partnerships.

**10.** Whether or not this is to include New York partners depends on the unresolved questions about the location of Cunard's principal place

stayed pending the outcome of the New York action.

SO ORDERED.

of business and about the proper interpretation